IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DAVID C. WEST, CHAPTER 7 TRUSTEE, <br><br> Plaintiff/Appellant, <br><br> vs. <br><br> MARLESE CHRISTENSEN, <br><br> Defendant/Appellee. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:16-cv-01180-CW <br> Judge Clark Waddoups |

Appellant David C. West, Trustee of the Chapter 7 Bankruptcy Estate of Louis R. Christensen, challenges the November 7, 2016 Memorandum Decision of the bankruptcy court and its judgment denying the Trustee's Motion for Summary Judgment and granting Defendant/Appellee Marlese Christensen's Cross-Motion for Summary Judgment. After full consideration of the written briefing from the parties, the court has determined that oral argument would not be helpful to the court in deciding the appeal. *See* DUCivR 7-1(f). For the reasons stated below, the court AFFIRMS the bankruptcy court's determination that the Trustee has not established that Marlese Christensen received a "transfer of an interest of the debtor in property" and thus the Trustee cannot avoid the transfer as preferential or fraudulent.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 158 (a) and (c). Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(F) and (H).

This court reviews a "bankruptcy court's findings of fact for clear error, its legal conclusions de novo, and mixed questions of law and fact de novo." *In re Adam Aircraft Industries, Inc.*, 805 F.3d 888, 893 (10th Cir. 2015). The parties agree that there are no contested issues of fact in this appeal, only questions of law.

## BACKGROUND

The Debtor, Louis R. Christensen, married Marlese Christensen, the appellee, in 2006. Prior to their marriage—a second marriage for both of them—the couple entered into a prenuptial agreement which, among other things, reserved to each of them their pre-marital, separate property including real property owned by Marlese in Washington Terrace, Utah. In 2010, the couple concluded they needed a larger home and decided to buy property located at 1706 Bonita Bay Drive in St. George, Utah (the "Bonita Bay Property"). (Appellant's App'x, *Findings of Fact, Conclusions of Law, and Final Judgment* 1-4; Dkt. No. 8.) The couple jointly selected the home, used over $40,000 in marital funds to make an initial down payment and purchase the home, lived in the home together, and used another approximately $40,000 of marital funds to landscape the home and increase its value. Both husband and wife contributed income to the household and home-related expenses. (*Id.*) The title to the property, however, was conveyed solely in the Debtor's name. In approximately mid-March 2010, about two weeks after the Debtor obtained title to the property, he presented Marlese with two signature pages for documents he represented were intended to place title to the Bonita Bay Property in both of their names. Marlese signed the pages without being shown the rest of either document. She later discovered that one signature page was actually for a quitclaim deed purporting to give the Debtor an equal ownership interest in her Washington Terrace separate property, while the other

signature page was for a trust deed on her Washington Terrace home purporting to secure a $120,000 loan the Debtor independently obtained using Marlese's separate property as collateral. The Debtor subsequently arranged for Marlese's signatures on these pages to be notarized and attached to the documents described above, all without Marlese's presence or knowledge. (Appellant's App'x, *Decl. of Marlese Christensen* 2-4, *Second Decl. of Marlese Christensen* 2-3; Dkt. No. 8.)

Eventually Marlese discovered the existence of the loan against her separate property and the facts concerning how it was obtained. She hired a lawyer to assist her. The Debtor responded on November 3, 2010 by "kicking [Marlese] out" of the Bonita Bay Property and filing for divorce on December 6, 2010. (*Id.*) Marlese then learned that the Debtor was attempting to sell the Bonita Bay Property and learned, for the first time, that her name was not on the title to the Bonita Bay Property as she had believed. In an effort to put potential purchasers on notice of her interest in the property, Marlese's attorney recorded a Notice of Interest. (*Id.*) In January 2011, a buyer was located for the property at a sales price of $290,000. The net proceeds after paying closing costs were $272,133.76, which were held by the title company. On January 26, 2011, Marlese released her Notice of Interest on the Bonita Bay Property in exchange for the title company issuing her a check for $120,000 on January 27, which she immediately used to pay off the Debtor's loan and thus secure the release of the fraudulently obtained trust deed on her separate Washington Terrace property.[1] The Debtor received the remaining proceeds of $152,133.76. (*see id.*, *Findings of Fact, Conclusions of Law, and Final Judgment* 5; Dkt. No. 8.)

---

[1] The record is silent as to any correction that may have been made to the fraudulently conveyed title to Marlese's separate Washington Terrace property.

Before the divorce could be finalized, the Debtor filed a bankruptcy petition with the United States Bankruptcy Court for the District of Utah on July 22, 2011. A bifurcated divorce decree was entered on April 11, 2013 terminating the marriage, but because of the Debtor's pending bankruptcy case, the divorce court reserved the property division for later disposition. (Appellant App'x, *Findings of Fact, Conclusions of Law, and Final Judgment* 2; Dkt. No. 8.) On July 11, 2013, the bankruptcy Trustee—the appellant here—filed a complaint against Marlese seeking to recover the $120,000 she received after the sale of the Bonita Bay Property.[2] Following a number of proceedings in the bankruptcy court, the automatic stay was lifted to allow the Debtor and Marlese "to return to state court and litigate the division of their marital property and [Marlese's] interest in the $120,000 that was transferred to her." (Appellant App'x, *Order and Judgment on Def.'s Mot. for Summ. J. and Pl.'s Mot. for Partial Summ. J.*; Dkt. No. 8.) Marlese then sought to resolve the remaining property issues by filing a motion for summary judgment in the divorce court, which was unopposed and granted on January 22, 2016. The bankruptcy Trustee chose not to participate in the divorce court proceedings. (Appellant App'x, *Supp. Memo. re Mot. for Summ. J. and Mem. in Support filed by David C. West* 12; Dkt. No. 8.)

The divorce court entered findings of fact to include that "[a]lthough title to the Bonita Bay Property was solely in [the Debtor's] name, the home was marital property in which both spouses had an interest at the time the petition in this case was filed and also at the time of [the Debtor's] subsequent bankruptcy petition." (Appellant App'x, *Findings of Fact, Conclusions of Law, and Final Judgment* 5; Dkt. No. 8.) The divorce court also entered conclusions of law that

---

[2] The Complaint alleged that the payment was a fraudulent transfer under 11 U.S.C. § 548(a)(1)(A) and (B) as well as under 11 U.S.C. § 544 and Utah Code Ann. §§ 25-6-5 and 25-6-6. The Complaint also alleged that the payment was an avoidable preferential transfer under 11 U.S.C. § 547 and sought to recover the money from Marlese under 11 U.S.C. §550. (Appellant App'x, *Complaint* 1-23; Dkt. No. 8.)

upheld the prenuptial agreement and confirmed that each spouse retained his or her separate property. In addition, the divorce court concluded that "[t]he Bonita Bay Property was marital property in which each party had an equal interest at the time the petition in this case was filed;" "[w]hen the divorce petition was filed, the Bonita Bay Property came under the auspices of this Court;" [t]he subsequent bankruptcy petition filed by [the Debtor] did not divest this Court of jurisdiction over the Bonita Bay Property or any of the other marital property;" and "[the Debtor's] bankruptcy petition did not divest Marlese of her equal ownership interest in the Bonita Bay Property." (*Id.* at 6.) Then, to equitably adjust the division of marital property, the divorce court awarded Marlese "an additional $12,000 from the proceeds of the sale of the Bonita Bay Property above and beyond the one-half to which she was entitled as a result of her ownership interest." (*Id.*) The value of Marlese's one-half interest in the Bonita Bay Property was set at $136,066.88. (*Id.* at 8.)

The divorce court's findings, conclusions, and final judgment were filed with the bankruptcy court on August 18, 2016, approximately one month after all briefing on a third round of competing summary judgment motions had been filed in bankruptcy court. The bankruptcy court issued a Memorandum Decision on November 4, 2016, concluding that the Trustee's claim, seeking to avoid the $120,000 distribution of the Bonita Bay Property proceeds to Marlese as a preferential transfer under § 547, is barred by issue preclusion. The bankruptcy court reasoned that because the divorce court concluded that the Bonita Bay Property was marital property to which Marlese had an equal interest exceeding $120,000 at the time of the transfer, when Marlese received $120,000 in proceeds from its sale, she was not receiving a "transfer of an interest of the debtor in property" under 11 U.S.C. §547(b), but receiving her own property.

(*Mem. Decision* 20, Dkt. No. 1-2.) Alternatively, based on equitable considerations under Utah divorce law, the Debtor's fraudulent actions, policy concerns about a bankruptcy court undermining property settlements by finding preferential or fraudulent transfers in the absence of evidence of collusion, and in the absence of Utah or Tenth Circuit law requiring otherwise, the bankruptcy court determined that the Bonita Bay Property and its sales proceeds were equally owned at the time of the transfer notwithstanding that title was held solely in the Debtor's name. (*Id.*) The Trustee raises three issues on appeal: (1) whether the bankruptcy court erred by determining that the Trustee's suit is barred by issue preclusion because the issue of ownership was decided by the state divorce court; (2) whether the bankruptcy court erred when it ruled that Marlese Christensen was not receiving a "transfer of an interest of the debtor in property" under 11 U.S.C. § 547(b) but was instead receiving her own property; and (3) whether the bankruptcy court erred by concluding that the holding in *In re Harrell*, 2001 WL 2986130 (Bankr. D. Utah 2007) is distinguishable and/or otherwise not applicable to this action.

## ANALYSIS

### I.      Issue preclusion

Under Utah law, a state court judgment has a preclusive effect on an issue in a later federal court action when four elements are satisfied: (1) "the party against whom [issue preclusion] is invoked was a party or in privity with a party to the prior adjudication;" (2) "the issue previously decided is identical with the one presented in the action in question;" (3) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action" and (4) "the prior action has been finally adjudicated on the merits." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). The bankruptcy court determined that all four elements of

issue preclusion had been met, although it ruled separately on the merits of the Trustee's ownership argument in the event that a decision rendered by the state divorce court on an unopposed motion for summary judgment did not constitute the "complete, full, and fair litigation" element of the test. (*Mem. Decision* 15, Dkt. No. 1-2.) The Trustee does not challenge this element, however. The Trustee challenges only the bankruptcy court's determination that issue preclusion applies based on an argument that the state court decision addressed a different issue than the issue in this action. The court disagrees with the Trustee and affirms the bankruptcy court.

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement (Second) of Judgments § 27,* Issue Preclusion—General Rule (1982). Whether this doctrine is applicable "does not depend on whether the claims for relief are the same." *Robertson v. Campbell*, 674 P.2d 1226, 1230 (Utah 1983). Rather, "[w]hat is critical is whether the issue that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue as that raised in a second suit." *Id.* The Trustee argues that the divorce court action was not a "quiet title action to determine ownership" of the Bonita Bay Property, but rather a "divorce proceeding to make an equitable division." (Appellant Br. 23, Dkt. No. 7.) The nature of the action, however, is not the critical question:

> It is not the identity of the thing sued for, or of the cause of action, which determines the conclusiveness of a former judgment upon a subsequent action, but *merely the identity of the issue involved in the two suits*. If an issue presented in a subsequent suit between the same parties or their privies is shown to have been determined in a former one, the question is res judicata [or collateral estoppel],

> although the actions are based on different grounds, or tried on
> different theories, or are instituted for different purposes and seek
> different relief.

*Robertson*, 674 P.2d at 1230 (citing *Pickeral v. Federal Land Bank*, 15 S.E.2d 82, 85 (Va. 1941)

(emphasis added). In *Robertson*, for example, a factual finding of undue influence in a prior

proceeding concerning the validity of a will was found to be res judicata as to the issue of undue

influence in a subsequent proceeding involving the validity of a trust executed the same day. *Id.*

Similarly, a jury's rejection of an employer's allegedly good faith reliance on drug test results

when firing an employee who claimed discrimination under the Americans with Disabilities Act

was res judicata in a subsequent proceeding involving whether the employee could maintain a

suit against the test providers for negligence and negligent misrepresentation of those drug test

results. *Fowler v. Teynor*, 323 P.3d 594 (Utah Ct. App. 2014). The *Fowler* court concluded that

the same issue was at stake, namely the answer to the question of why the employee was fired.

Because the jury in the first action rejected the employer's stated reason—reliance on the test

results—the court barred the employee from re-litigating whether the employer relied on the

allegedly negligently misrepresented test results in the second action against the medical

providers.

      The same principles apply here. In the bankruptcy action, the court lifted the stay

specifically to allow Marlese and the Debtor "to return to state court and litigate the division of

their marital property and [Marlese's] interest in the $120,000 that was transferred to her."

(Appellant App'x; *Order and Judgment dated Aug. 10, 2015*; Dkt. No. 8.) Because it was

undisputed that the Debtor held sole legal title to the Bonita Bay Property at the time it was sold,

the only purpose for this order was to determine whether Marlese had some other type of interest

in the property at the time of its sale, and if so, for what amount. If Marlese had an interest in the Bonita Bay Property that exceeded $120,000 at the time of its sale, then the proceeds she received from the sale were not a "transfer of an interest of the debtor in property" under the bankruptcy code. In the divorce action, it was similarly essential for the state court to determine whether Marlese had an interest in the Bonita Bay Property and its sale proceeds and when that interest arose. This is because the Bonita Bay Property and its proceeds represented the largest asset she claimed as being marital property. If the facts gave rise to the court's determination that the nature of the property was marital, as opposed to separate, a presumption that Marlese had an equal interest in that property would apply. *See Goggin v. Goggin*, 299 P.3d 1079, 1094 (Utah 2013) ("[E]ach party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property.") Furthermore, if the nature of the Bonita Bay Property was marital, the property itself as well as the funds obtained from its sale were owned equally during the marriage. *Dahl v. Dahl*, 345 P.3d 566, 600 (Utah 2015) ("Prior to the entry of a divorce decree, all property acquired by parties to a marriage is marital property, owned equally by each party.") Thus, the key issues—whether Marlese had an interest in the Bonita Bay Property and/or its proceeds on January 27, 2011, and if so, the value of that interest—were the same and are dispositive in both actions.

The divorce court made specific findings of fact as to the nature of Marlese's interest and when that interest was operative: "Although title to the Bonita Bay Property was solely in [the Debtor's] name, the home was marital property in which both spouses had an interest at the time the petition in this case was filed [December 6, 2010, well before the transfer took place] and also at the time of [the Debtor's] subsequent bankruptcy petition [filed on July 22, 2011]."

(Appellant App'x, *Findings of Fact, Conclusions of Law, and Final Judgment* 5; Dkt. No. 8.)

The divorce court also determined the extent of Marlese's interest: "The Court decrees that the value of each party's interest in the Bonita Bay Property was $136,066.88." (*Id.* at 7.) In the bankruptcy action, the Trustee is seeking to re-litigate both the nature of Marlese's interest in the Bonita Bay Property as well as when that interest was acquired. Even though the two actions were instituted for different purposes, seek different relief, and propose different theories or grounds to justify relief, *see Robertson*, 674 P.2d at 1230, the identical issue of Marlese's interest in the Bonita Bay Property and its proceeds was decided in the state action and is correctly precluded here.

## II.     Marlese Christensen received her own property

The Trustee has asserted a claim that the $120,000 Marlese received from the Bonita Bay Property proceeds was an avoidable transfer. Under 11 U.S.C. §§ 547 and 548, only the transfer of an "interest of the debtor in property" can be avoided as a preferential or fraudulent transfer. Accordingly, if the $120,000 Marlese received was her own property, rather than the Debtor's property, the Trustee cannot avoid the transfer. Although the court affirms the bankruptcy court's determination that this claim is barred by issue preclusion, *supra*, it separately and independently reviews the Trustee's claim that the bankruptcy court erred in determining that Utah law gave Marlese an ownership interest in the Bonita Bay Property and/or its proceeds that precludes the transfer from being avoided.

"Property interests are created and defined by state law." *Parks v. FIA Card Services, N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008); *see also Butner v. United States*, 440 U.S. 48, 55 (1979). Thus, in the bankruptcy action, whether Marlese had a property interest

in the Bonita Bay Property or its sales proceeds at the time she received it is determined by examining Utah law. Because it is undisputed that title to the Bonita Bay Property was held solely in the Debtor's name, on de novo review, the court examines Utah law to determine if the Debtor's title ownership represented an exclusive interest in the Bonita Bay Property and/or its proceeds that would enable the Trustee to avoid the transfer of $120,000 to Marlese. The court concludes that Marlese had an undivided one half equitable interest in the property and its proceeds at the time of the transfer under both Utah divorce law and Utah law governing constructive trusts.

A. **Utah Divorce Law**

The nature of property interests owned by spouses is not defined in Utah divorce statutes, although Utah divorce statutes do establish the court's authority to make an equitable division of any property interests owned by the parties to a divorce. *See* Utah Code Ann. § 30-3-5(1). This statute has been interpreted broadly to allow divorce courts to address property of every kind and however owned by spouses. *See Englert v. Englert*, 576 P.2d 1274, 1276 (Utah 1978). As for the actual ownership of property interests between spouses, however, Utah case law established the general concept early on that property purchased during the marriage belongs equally to both spouses. To the extent that the ownership interest in real property is not a title interest, it is an equitable interest. For example, as early as 1928, the Utah Supreme Court determined that a wife not named on the title of real estate purchased during the marriage using the joint earnings of both parties was the "equitable owner of an undivided one-half interest in the home, independent of the decree of divorce." *Jensen v. Jensen,* 269 P. 485, 487 (Utah 1928).

Over time and based on a wide variety of circumstances, a number of clarifications and caveats to this basic principle have been identified. For example, courts began to evaluate more carefully what kind of property each spouse brought into the marriage, the property that was acquired during the marriage, and by whose contributions the property was acquired. *MacDonald v. MacDonald*, 236 P.2d 1066, 1070 (Utah 1951). Generally, gifts and inheritances received by one spouse during the marriage were considered separate, rather than jointly owned property, although a number of factors determine whether distribution solely to that spouse is equitable. *See Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987). For a court to convert premarital property owned solely by one spouse into jointly owned marital property subject to equitable division requires a finding of "unique circumstances." *Walters v. Walters*, 812 P.2d 64, 68 (Utah Ct. App. 1991). For example, a spouse can acquire an "equitable interest" in the separate property of the other spouse by contributing "to the enhancement, maintenance, or protection of that property." *Osguthorpe v. Osguthorpe*, 804 P.2d 530, 535 (Utah Ct. App. 1990). *See also Mortensen v. Mortensen*, 760 P.2d 304 (Utah 1988). Yet over the years, it has remained a constant that other than in these and similar special circumstances, regardless of whose name property is titled in, if the property was acquired during the marriage by the joint efforts of the parties, the property is presumed to be owned by both of them from the time of its acquisition.[3]

---

[3] Parties are, of course, free to enter into premarital agreements to contract around these fundamental principles of marital property law. *See* U.C.A. § 30-8-1 et seq. (defining how parties to a marriage may contract with respect to all property whenever and wherever acquired or located, including interests both present or future, legal or equitable, vested or contingent, in real or personal property including income and earnings). Here, the parties' premarital agreement appears to have limited the operation of Utah law to convert the parties' defined pre-marital separate property into marital property, but there is no evidence to suggest that the parties intended to alter otherwise applicable Utah law as to the creation and definition of marital property.

More recently, case law has formalized the steps a court should take in defining and resolving property issues between spouses upon divorce. First, the court should "categorize the parties' property as part of the marital estate or as the separate property of one or the other." *Burt v. Burt*, 799 P.2d 1166, 1172 (Utah Ct. App. 1990). "Marital property is ordinarily all property acquired during marriage and it encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived." *Dunn v. Dunn*, 802 P.2d 1314, 1317-18 (Utah Ct. App. 1990) (internal quotation marks omitted). Just as in *Jensen* fifty years previously, the name in which title is held is not conclusive to this classification, and a decree of divorce need not first be entered before it is considered jointly owned, or marital property. *Jensen*, 269 P. at 487 (wife was the "equitable owner of an undivided one-half interest in the home, independent of the decree of divorce.") *See also Dahl*, 325 P.3d at 600 ("Prior to the entry of a divorce decree, all property acquired by parties to a marriage is marital property, owned equally by each party.") Second, the court should then presume that each party is "entitled to all of his or her separate property and fifty percent of the marital property." *Burt*, 799 P.2d at 1172. A party who seeks either to establish "unique circumstances" that converts otherwise separate property into marital property, or a party who seeks a finding that property acquired during the marriage is not jointly owned but should be considered separately owned property, must take affirmative steps to challenge these ownership presumptions. *See Boyer v. Boyer*, 259 P.3d 1063, 1066 (Utah Ct. App. 2011) (the court "should consider whether there are exceptional circumstances that overcome the general presumption that marital property should be divided equally between the parties"). *See also Dahl*, 325 P.3d at 579, citing *Woodward v. Woodward*, 656 P.2d 431, 432-33 (Utah 1982) ("The essential criterion is whether a right to the benefit or the

asset has accrued in whole or in part during the marriage."). Only then does the court assign values to the various items of marital property and equitably distribute the property between the parties. *Boyer*, 259 P.3d at 1066.

Applying those principles here, Marlese Christensen was not listed on the title to the Bonita Bay Property. Nevertheless, the divorce court made factual findings that it was purchased during the marriage using marital funds and that its value was enhanced by the joint efforts and income of both parties during the marriage. The divorce court's resulting conclusion that the Bonita Bay Property and/or its proceeds were marital property, notwithstanding having been legally titled solely in the Debtor's name, correctly resolved the question of ownership. Irrespective of the decree of divorce, these facts establish that Marlese was the equitable owner of an undivided one-half interest in the property at the time of its sale. Neither the Debtor nor the Trustee challenged those facts before the divorce court, and they do not challenge those facts here. Notwithstanding Debtor's separate legal title to the property, under Utah divorce law there is no factual evidence to support a finding of separate ownership in the context of a marriage between the Debtor and Marlese.[4]

These principles also demonstrate that a divorce court can do more than equitably distribute property in a divorce action regardless of title. Contrary to the Trustee's argument, it

---

[4] Where there was no court order prohibiting dissipation of the marital estate at the time, the Debtor's effort to sell the Bonita Bay Property titled solely in his name was not unlawful while the divorce was pending, notwithstanding Marlese's equitable interest in it. *Hamilton v. Hamilton*, 562 P.2d 235 (Utah 1977) (Utah Code Ann. § 30-3-5 does not authorize or prohibit a party to a divorce action from transferring assets during the pendency of a divorce proceeding). Marlese's Notice of Interest was properly recorded to protect her equitable interest in the home under these circumstances. Had she failed to record her interest, she could not have prevailed in a title action against a bona fide purchaser, but she would still have had an equitable interest that would have to be satisfied by a distribution of other assets in the divorce action. *See id.* (Wife could not prevail in quiet title action against bona fide purchaser, but court retained jurisdiction over remaining assets from which wife's equitable interest could be satisfied.)

can also "acknowledge . . . property interest[s] created by marriage" and "create an ownership interest, either legal or equitable" by classifying property as marital property. (Appellant Br. 27, Dkt. No. 7.) Even the cases cited by the Trustee acknowledge this. The Trustee argues that *Hoagland v. Hoagland*, 852 P.2d 1025 (Utah Ct. App. 1993) stands for the principle that a court-ordered conveyance is necessary to change ownership of separately titled property to facilitate a just and equitable distribution upon divorce. While this is not an incorrect statement of law at the distribution stage of a divorce action if a change in title ownership is required to facilitate the court's distribution, the facts of *Hoagland* do not support the use the Trustee hopes to make of the case.

In *Hoagland*, upon the parties' marriage they lived in a home awarded to the wife from a prior marriage. *Id.* at 1026. After three years, the wife sold the home and used the proceeds to purchase a home titled in both parties' names, where they lived for another ten years. *Id.* Both parties quit their jobs, established a partnership, and began operating a family grocery business. *Id.* Later, when the business failed, the husband executed a quit claim deed on the home in the wife's favor to protect the house from business creditors. *Id.* at 1026. The court concluded the house was marital property and ordered it sold, whereupon the court awarded the wife the nearly $20,000 she had in premarital equity and then equally divided the remaining proceeds between the parties. *Id.* at 2017. The appeals court upheld the classification of the home as marital property, notwithstanding the quit claim deed in the wife's favor. *Id.* at 1028. If anything, this decision supports the bankruptcy court's conclusion that in Utah title ownership is not determinative of equitable ownership in the context of a marriage. The *Hoagland* court recognized that even though the husband executed a quit claim deed renouncing his legal title to

the home, the home retained its character as marital property and remained equitably owned by both parties, which resulted in its classification as marital property and its subsequent distribution using additional equitable principles.

The Trustee also claims that a factual finding the court did not expressly state in *Hogue v. Hogue*, 831 P.2d 120 (Utah Ct. App. 1992), namely that a husband owned an equitable interest in ranch property because of the parties' marriage, supports his position. The Trustee, however, fails to recognize that the court decided just this without stating it explicitly. In *Hogue*, the parties married, divorced, and then re-married and divorced a second time. *Id.* at 121. Ranch property was acquired by Mr. Hogue after the parties' first divorce. Ms. Hogue began working for Mr. Hogue's business and, about three years later, moved into the ranch house with Mr. Hogue. During this time, Mr. Hogue conveyed sole title of the ranch to Ms. Hogue to protect the property from his business creditors. The parties also jointly executed a contract to purchase an eleven acre parcel adjoining the ranch property. Then the parties married for the second time, and went on to jointly purchase a number of items of personal property for use on the ranch. *Id.* Two years later, Mr. Hogue filed for Chapter 7 bankruptcy relief and claimed no interest in the ranch. Four years later, the parties again filed for divorce and Mr. Hogue was awarded an undivided one half interest in the ranch. *Id.* This distribution was upheld on appeal based on the principles stated in *Burke*, 733 P.2d 133, and *Haumont v. Haumont*, 793 P.2d 421 (Utah App. 1990) that premarital and/or separate property can become so commingled as to lose its separate character and allow it to be more appropriately characterized as marital property. *Id.* at 122.

*Hogue* presents a set of facts not comparable to the factual situation here. The issue there was whether premarital property was more appropriately classified as jointly owned marital

property for distribution. Here, there was no claim in the divorce action and there is no factual dispute here that the Bonita Bay Property was acquired during the marriage with joint funds. Although the Trustee points out that the *Hogue* court never explicitly stated that the husband was awarded an interest in the separately titled ranch *because* he owned an equitable interest in it due to the parties' marriage, that was the whole point of the decision. The unique factual circumstances outlined by the *Hogue* court caused the separate premarital property titled in wife's name to become marital property owned by both spouses and thus become subject to equitable division.[5]

The court is also not persuaded by the Trustee's argument that under Utah law a spouse is not an equitable owner of marital property, but rather a creditor of the title owner spouse and entitled only to an equitable distribution. (Appellant Br. 21-22; Dkt. No. 7.) Trustee states his argument thus: "In a Utah divorce proceeding, each spouse has a claim against the other for an equitable share of the other's marital property but does not own an interest [in] her spouse's property." (*Id.* at 31.) Trustee cites *Bradford v. Bradford*, 993 P.2d 887, 893-894 (Utah Ct. App. 1999) for this argument, but *Bradford* does not support it. *Bradford* involved two cases tried together by agreement, a divorce action between Mr. and Mrs. Bradford and a fraudulent conveyance action under the Uniform Fraudulent Transfer Act involving both Bradfords and Mrs. Bradford's adult son, Mr. Demita. *Id.* at 889. The property at issue was the premarital home

---

[5] Utah divorce courts make a distinction between separate property that becomes converted to jointly owned marital property subject to equitable division and separate property that is nonetheless awarded to the non-owner spouse during the distribution stage due to other equitable considerations (such as in lieu of alimony, for attorney's fees, or because of lack of other marital assets from which to make equitable property settlements). *Compare Hogue* and *Moon v. Moon*, 790 P.2d 52 (Utah Ct. App. 1990) *with Burt*, 799 P.2d 1166; *Mortensen v. Mortensen*, 760 P.2d 304 (Utah 1988); and *Noble v. Noble*, 761 P.2d 1369 (Utah 1988).

Mr. Bradford brought into the marriage titled solely in his name. Improvements to the home during the marriage were paid for entirely from Mr. Bradford's premarital funds, and the court found that Mrs. Bradford made no significant contribution toward the improvements. *Id.* About four years into the marriage, however, Mr. Bradford executed a warranty deed to transfer the home into joint tenancy with Mrs. Bradford. *Id.* at 890. Seven years later, without notice to Mr. Bradford and after numerous problems in the marriage and threats of divorce, Mrs. Bradford executed a quit claim deed transferring her interest in the home to her son, which transfer precipitated both lawsuits. *Id.* On appeal, the court upheld the trial court's determination that Mr. Bradford was a creditor of Mrs. Bradford for purposes of the Uniform Fraudulent Transfer Act (UFTA), *see Utah Code Ann. §§ 25-6-1 to -13* (1998) and declared the transfer void. In finding Mr. Bradford a creditor, the court followed the reasoning of the Oregon Supreme Court in a fraudulent transfer action between divorcing parties, where a conveyance "was obtained by fraud to hinder or prevent [one spouse's] recovery of [the other spouse's] equitable interest" in the property. *Id.* at 891. Having determined that Mr. Bradford met the definition of creditor for that purpose, the court then proceeded to analyze whether Mrs. Bradford fraudulently conveyed the property and concluded that the transfer was void. *Id.*

Only after Mr. Dimitri was determined to have acquired no interest in the home did the court then address the nature of the property and the manner in which it had been distributed between Mr. and Mrs. Bradford under the principles of Utah divorce law. *Id.* The court concluded that what would otherwise have been Mr. Bradford's separate, premarital property was converted into marital property in which Mrs. Bradford had an equal interest because four years into the marriage Mr. Bradford made a gift by warranty deed naming Mrs. Bradford as a

joint tenant. *Id.* at 892. Finally, because the trial court had awarded the home solely to Mr. Bradford without sufficient findings to support the unequal award of marital property, the case was remanded to the trial court for further findings or an altered distribution of marital assets that accounted for Mrs. Bradford's equitable interest in the home. *Id.* at 894.

Nothing in this case supports the Trustee's argument that under Utah divorce law, a spouse is a creditor rather than an equitable owner of marital property. After *Bradford*, in the context of a fraudulent transfer claim, when a spouse tries to transfer legal title in property away from herself in a misguided effort to defeat the other spouse's interest in the property upon divorce, the spouse can maintain an action as a "creditor" under the UFTA to set aside the transaction. *Bradford* did not change Utah law as to when and how spouses acquire equitable interests in marital property. The undisputed facts here demonstrate that the bankruptcy court correctly decided that under Utah divorce law, Marlese owned an equitable interest exceeding $120,000 in the Bonita Bay Property and/or its proceeds at the time of its sale.

## B. Constructive Trust

"A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Rawlings v. Rawlings*, 358 P.3d 1103, 1110 (Utah 2015) (internal punctuation omitted). Contributions made by one person to the acquisition of property titled in another's name is one of many means by which the equitable duty to convey arises. *Id.* at 1112 ("Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner."). Another means that gives rise to a constructive trust is when a title owner becomes a "conscious wrongdoer," by,

19

among other acts, unilaterally disposing or attempting to dispose of real property in which

another person has an equitable interest. *Id.* In such circumstances, "[a] constructive trust is the

formula through which the conscience of equity finds expression" and the court has "broad

powers to fashion an equitable remedy." *Id.* at 1113.

The undisputed facts here are that Marlese contributed to the acquisition of the Bonita

Bay Property, giving rise to a constructive trust. Moreover, the Debtor engaged in conscious

wrongdoing, fraudulently representing to Marlese that she was signing paperwork to place her

name on the title to the Bonita Bay Property. In fact, the Debtor obtained her signatures to

defraud her of her separate interest in her Washington Terrace property and subject that property

to a trust deed securing a loan whose proceeds were issued solely to the Debtor. This conscious

wrongdoing made it inequitable for the Debtor to solely retain the proceeds from the sale of the

Bonita Bay Property in which Marlese had an equitable interest. The fact that Marlese accepted

the false representation and signed the documents presented to her supports an inference that the

couple had always understood and intended that the Bonita Bay Property be titled jointly. And

most importantly here, because these acts—Marlese's contributions to acquisition and the

Debtor's conscious wrongdoing—gave rise to a constructive trust prior to the subsequent sale of

the Bonita Bay Property, the restitution to which Marlese was entitled included a title, or

possessory, interest, as opposed to merely a security interest, in the property. *Id.* at 1111. The

court's equitable power to impose a constructive trust to avoid injustice and unjust enrichment

can alter the record title at the relevant time. *See Goggin*, 267 P.3d 885.

Thus, even if the Trustee were correct—which he is not—that Marlese was essentially

required to have legal title ownership of the Bonita Bay Property at the time it was sold to avoid

receiving a "transfer of an interest of the debtor in property," the facts giving rise to the constructive trust had already occurred, which means the court has the ability to change the record title at the relevant time. Marlese had an ownership interest in the Bonita Bay Property and/or its proceeds at the time she received them under either Utah divorce law or Utah's doctrine of constructive trusts.

### III. The holding in In re Harrell accurately reflects Utah law and is not applicable here.

The court now turns to the Trustee's final assignment of error. The Trustee argues that the bankruptcy court failed to correctly apply the principles set forth in *In re Harrell*, 2001 WL 2986130 (Bankr. D. Utah 2007). There, the bankruptcy trustee sought to sell, for the benefit of the bankruptcy estate, real property solely owned by the debtor following the debtor's divorce. The problem was that at the time the bankruptcy petition was filed, the debtor equally held legal title with his then-spouse, and section 541(a)(1) of the bankruptcy code provides that property of the bankruptcy estate only includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* at *2. The trustee argued that because the debtor and his spouse were separated and contemplating divorce at the time the bankruptcy petition was filed, the debtor not only had a one-half legal interest in the property, but a 100% equitable interest in the property subject to division in the divorce proceedings. *Id.*

The court in *In re Harrell* concluded that under Utah law, "Utah is a 'legal title state,' meaning that a spouse is held to own any property to which he or she owns legal title" and that "until a divorce decree is entered one spouse does not have ownership to property titled in the other spouse." *Id.*, citing *Bradford*, 993 P.2d 887. Specifically, it stated that:

> Under Utah law a debtor spouse is held to own only property to which he or she holds legal title at the time of filing for bankruptcy relief. If the debtor is involved in divorce proceedings at the time of filing (or even one commenced months after the bankruptcy filing, as is the case here), the debtor does not have an equitable interest in the property beyond that to which he or she has legal title. *Until and unless a state court enters a divorce decree dividing marital property, the debtor cannot be said to have an interest in property unless he or she has legal title to that property.*

*Id.* (emphasis added). The appellant Trustee here argues that this language should preclude the bankruptcy court from determining that Marlese had an equitable interest in the Bonita Bay Property because she did not have legal title to it at the time the bankruptcy petition was filed. The bankruptcy court concluded that its finding that Marlese had an ownership interest in the Bonita Bay Property and/or its proceeds at the time the bankruptcy petition was filed is consistent with *In re Harrell* because the divorce decree vested Marlese with that interest.

This court agrees with the bankruptcy court's result and reasoning as to the divorce court's findings about Marlese's interest, but concludes there is a key factual and legal difference between this case and *In re Harrell* that more simply determines the outcome. That difference is that the trustee in *In re Harrell* argued that notwithstanding the parties' marriage and joint legal title to the property at the time the petition was filed, the debtor had a 100% equitable interest in the property due to the parties' marital separation and contemplated divorce proceedings. As explained in the analysis in part II, *supra*, this is incorrect under Utah divorce law. Rather, the presumption as to equitable ownership of marital property is that each spouse owns an undivided one-half equitable interest in marital property, notwithstanding legal title, that is subject to equitable distribution. *See Jensen*, 269 P. at 487*; Dahl*, 345 P.3d at 600. In both *In re Harrell* and *Bradford* (upon which the court in *In re Harrell* relied), each married couple had joint legal title

to the real property at issue, which fixed the presumption of each spouse's equitable ownership interest at fifty percent prior to the divorce court's equitable distribution of the properties. In those circumstances, the *In re Harrell* court's statement that "the debtor does not have an equitable interest in property beyond that to which he or she has legal title" is accurate. Neither the facts of *In re Harrell* or the facts of *Bradford* support the court's application of that statement here, when only one spouse holds legal title to marital property and Utah law establishes a presumption of fifty percent equitable ownership interest between spouses. Accordingly, the court concludes that the bankruptcy court did not err in concluding that the holding in *In re Harrell* is distinguishable and/or otherwise not applicable to this action.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the result of the bankruptcy court that the Trustee may not avoid the transfer of $120,000 from the proceeds of the Bonita Bay Property to Marlese Christensen.

DATED this 1st day of August, 2017.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge